UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| U.S. BANK N.A., SUCCESSOR TRUSTEE TO BANK OF AMERICA, N.A., SUCCESSOR TO LASALLE BANK N.A., AS TRUSTEE ON BEHALF OF THE HOLDERS OF THE WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES, WMALT SERIES 2,<br><br>                    Plaintiff,<br>     v.<br><br>ARTHUR G. WILLIAMS,<br>ANNA WILLIAMS, and<br>ARROW MORTGAGE CORPORATION,<br><br>                    Defendants. | Civil Action No. 4:17-CV-40145-DHH |

## REPORT AND RECOMMENDATION

**October 30, 2020**

Hennessy, M.J.

Plaintiff U.S. Bank, N.A. ("U.S. Bank"), successor Trustee to Bank of America, N.A. ("BOA"), successor to LaSalle Bank, N.A. ("LaSalle"), as trustee on behalf of the holders of the Washington Mutual Mortgage Pass-Through Certificates, WMALT 2005-5 ("the Trust"), filed this action to quiet title in a parcel of real estate owned by defendants Arthur G. Williams and Anna Fragale (collectively, "The Williamses").[1] The parcel is located at 8 Vista Circle, Rutland, Massachusetts ("the Property"), and the mortgage on the Property secured a loan by defendant Arrow Mortgage Corporation ("AMC"). U.S. Bank filed a motion for a default judgment against

---

[1] Anna Fragale was formerly Anna Williams. [Dkt. No. 70].

1

AMC and the Williamses. [Dkt. No. 44]. Subsequently, U.S. Bank filed a motion for entry of a consent judgment as to the Williamses. [Dkt. No. 69]. For the reasons stated below, the undersigned recommends that U.S. Bank's motion for default judgment be GRANTED as to AMC and DENIED AS MOOT as to the Williamses. The undersigned further recommends the motion for entry of a consent judgment with the Williamses be GRANTED.

I. BACKGROUND

A. **Procedural History**

U.S. Bank, a Delaware entity with a principal place of business in Minnesota, commenced the instant diversity action by filing a verified complaint against the Williamses in this court on November 6, 2017. [Dkt. No. 1]. Pursuant to Fed. R. Civ. P. 4(c), 4(e)(1), the Williamses were served with summonses and copies of the complaint. [Dkt. No. 5]. On January 22, 2018, after the time allotted for the Williamses to respond to the complaint had lapsed, U.S. Bank requested that the Clerk of Court enter default pursuant to Fed. R. Civ. P. 55(a). [Dkt. No. 6]. On March 1, 2018, the Clerk entered Notices of Default against the Williamses. [Dkt. Nos. 7, 8]. On March 20, 2018, U.S. Bank moved this court for entry of a default judgment. [Dkt. No. 10].

Thereafter, the mailed Notices of Default were returned as undeliverable. [Dkt. Nos. 13-14]. The court then instructed U.S. Bank to report whether service of U.S. Bank's motion for a default judgment was successful. [Dkt. No. 15]. U.S. Bank reported successful service of its motion for a default judgment, but did not address service of U.S. Bank's request for entry of default. [Dkt. No. 17]. After further court instruction, U.S. Bank reported in a supplemental affidavit successful service of its request for entry of default. [Dkt. No. 21]. Following a hearing in which U.S. Bank acknowledged that joinder and service of AMC, a Massachusetts entity, had

not been attempted, the court ordered U.S. Bank to amend its complaint to join AMC as a necessary party pursuant to Fed. R. Civ. P. 19. [Dkt. No. 24].

In response to the court's order, U.S. Bank amended its complaint to include AMC as a defendant, and narrowed its request for relief to only equitable quiet title. [Dkt. No. 30]. On January 15, 2019, the court denied U.S. Bank's original motion for a default judgment without prejudice because U.S. Bank's amended complaint mooted its original complaint on which the motion for a default judgment depended. [Dkt. No. 32]. U.S. Bank sent a copy of the amended complaint and summons to each of the defendants; none replied or personally appeared in court, and so U.S. Bank again requested entry of default, which the Clerk entered on December 26, 2019. [Dkt. Nos. 37-41]. On January 13, 2020, in accord with Fed. R. Civ. P. 55(b)(2), U.S. Bank filed a second motion for entry of a default judgment, and an equitable order quieting title to reflect U.S. Bank as the lawful assignee and mortgagee of record on the Property. [Dkt. Nos. 44-46].

On July 13, 2020, this court ordered U.S. bank to provide evidence that the Trust is the current lawful holder of the note U.S. Bank seeks to enforce in its default action. [Dkt. No. 48]. On August 21, 2020, U.S. Bank submitted a response to this court's order. [Dkt. Nos. 53-54]. On September 15, 2020, this court scheduled a hearing on the possession history of the promissory note in question. [Dkt. No. 55]. On October 15, 2020, U.S. Bank filed a motion to approve a consent judgment with the Williamses. [Dkt. No. 69]. The agreement for judgment stipulates that U.S. Bank is the mortgagee of record on the Property and waives its right to a deficiency judgment against the Williamses. [Dkt. No. 70].

B. **Note and Mortgage Transfers**

The Williamses purchased the Property by quitclaim deed in 2002. [Dkt. No. 30 ¶ 9; Ex. A]. In 2005, the Williamses borrowed from AMC, and signed a promissory note for, $282,500.

3

[Dkt. No. 30 ¶ 10; Ex. B]. To secure the loan, the Williamses gave a mortgage on the Property to Mortgage Electronic Registration Systems, Inc. ("MERS"). [Dkt. No. 30 ¶ 14; Ex. C]. The mortgage named AMC as the lender and MERS as the mortgagee. [Dkt. No. 30, Ex. C]. On June 23, 2006, the Williamses executed a Corrective Mortgage, which was recorded in the Worcester County (Worcester District) Registry of Deeds in Book 39322, Page 367. [Dkt. No. 30 ¶15; Ex. D]. The Corrective Mortgage named AMC as the mortgagee. [Dkt. No. 30, Ex. D].

The Williamses stopped making payments on the loan and entered default on June 1, 2009. [Dkt. No. 30 ¶ 27]. On January 8, 2016, mortgage servicer Select Portfolio Servicing, Inc. ("SPS"), sent the Williamses a 150-day notice of right to cure and notice of right to request a modified mortgage loan. [Dkt. No. 30 ¶ 29; Ex. J]. On June 6, 2016, the Williams' right to cure expired. [Dkt. No. 30 ¶ 30; Ex. J].

### 1. Note Transfers

The promissory note ("the Williams note") that the Williamses signed on April 21, 2005 promised to repay the loan from AMC. [Dkt. No. 30, Ex. B]. AMC endorsed the Williams note to Washington Mutual Bank, FA ("WAMU"). [Dkt. No. 30, Ex. B]. Subsequently, WAMU endorsed the note in blank and without recourse via stamp and signature.[2] [Dkt. No. 30 ¶ 12; Ex. B ("Pay to the order of _____ without recourse")]. On June 1, 2005, WAMU entered into a pooling and servicing agreement ("PSA") with LaSalle that created the Trust. [Dkt. No. 54 ¶ 13; Ex. E]. The agreement named WAMU as the "servicer," which gave it power "to service and administer the Mortgage Loans on behalf of the Trust." [Dkt. No. 54, Ex. E § 3.01]. WAMU was also named the initial custodian of the Trust assets. [Dkt. No. 54, Ex. E § 1.01]. The Williams note was sold to the Trust. [Dkt. No. 54 ¶ 13; Ex. F]. On October 17, 2008, LaSalle merged with

---

[2] Both AMC's endorsement to WAMU and WAMU's endorsement in blank are undated. [Dkt. No. 30, Ex. B].

4

BOA, making BOA successor trustee by merger. [Dkt. No. 73, Ex. A]. On September 25, 2008, WAMU failed and, with assistance from the Federal Deposit Insurance Corporation ("the FDIC"), JPMorgan Chase Bank N.A. ("JPMorgan") acquired WAMU's banking operations, including WAMU's obligations as custodian of the Trust assets. [Dkt. No. 54, ¶ 17]; see also 12 U.S.C. §§ 1821(d)(2)(A)(i), 1821(d)(2)(B)(i). Hence, on July 21, 2009, JPMorgan possessed the Williams Note endorsed in blank by WAMU. [Dkt. No. 54, ¶ 19]. On January 14, 2010, an attorney representing JPMorgan recorded the Williams note with the Worcester County Registry of Deeds. [Dkt. No. 30, Ex. F]. On January 16, 2010, JPMorgan assigned the Williams note to BOA, as noted above the successor trustee for the Trust. [Dkt. No. 30, Ex. G].

On December 30, 2010, U.S. Bank acquired BOA's securitization trust administration business. [Dkt. No. 73, Ex. B]. By an Assignment and Assumption Agreement, U.S. Bank succeeded BOA as the trustee for the Trust. [Dkt. No. 73, Ex. B]. A schedule to such agreement includes the Trust (of which the Williams note is a part) as an asset assigned to U.S. Bank. [Dkt. No. 73, Ex. C, p. 30]. On May 3, 2013, U.S. Bank, in its capacity as trustee for the Trust, appointed JPMorgan as the Trust's servicer. [Dkt. No. 54, Ex. A at 4]. On May 11, 2016, JPMorgan released the Williams note to SPS, an entity authorized to service the subject mortgage loan on behalf of U.S. Bank. [Dkt. No. 54 ¶¶ 2, 20].[3] On May 18, 2017, SPS released the original Williams note to Doonan, Graces & Longoria, LLC ("Doonan") for the purposes of this litigation. [Dkt. No. 54 ¶ 21]. U.S. Bank included the original promissory note to the Williams mortgage in its submission to the court and avers that it is the lawful holder of the endorsed-in-blank Williams note. [Dkt. No. 30 ¶ 13].

---

[3] The amended complaint states that SPS received the Williams note for servicing in 2013. [Dkt. No. 30 ¶ 26; Ex. I]. The undersigned does not find this inconsistency material because U.S. Bank was the noteholder in trust for the Trust in both 2013 and 2016.

### 2.     Assignments of the Mortgage

As stated above, in 2005, the Williamses signed the initial mortgage listing AMC as the lender and MERS as the mortgagee ("2005 Original Mortgage"). [Dkt. No. 30, Ex. C]. On June 23, 2006, the Williamses executed a corrective mortgage that changed the mortgagee from MERS to AMC ("2006 Corrective Mortgage"). [Dkt. No. 30 ¶ 15; Ex. D]. Despite no longer being the mortgagee of record, MERS assigned the 2006 Corrective Mortgage to BOA on November 5, 2009.[4] [Dkt. No. 30 ¶ 17; Ex. E].

In the affidavit from counsel for JPMorgan recording the note with the registry of deeds, JPMorgan's attorney averred that AMC assigned the 2006 Corrective Mortgage to WAMU, but that the assignment could not be located. [Dkt. No. 30, Ex. F]. The January 14, 2010 affidavit further asserted that JPMorgan rightfully owned the 2006 Corrective Mortgage because it held the promissory note endorsed in blank. [Dkt. No. 30, Ex. F]. When JPMorgan transferred the Williams note to BOA on January 16, 2010, it also purported to assign the 2006 Corrective Mortgage. [Dkt. No. 30 ¶ 22; Ex. G]. On December 1, 2016, BOA assigned the 2006 Corrective Mortgage to U.S. Bank. [Dkt. No. 30 ¶ 32; Ex. K]. Though BOA did assign U.S. Bank the 2006 Corrective Mortgage in 2016, U.S. Bank contends that the chain of assignment is invalid. U.S. Bank now requests that this court grant its equitable claim to the 2006 Corrective Mortgage.

### C.     Dissolution of AMC

On June 18, 2012, AMC involuntarily dissolved. [Dkt. No. 30 ¶ 24, Ex. H]. U.S. Bank asserts that because AMC has dissolved, AMC is unable to assign the 2006 Corrective Mortgage. [Dkt. No. 30 ¶ 25]. On November 30, 2018, U.S. Bank's agent contacted AMC's Registered

---

[4] The assignment from MERS to BOA also purports to assign the note. [Dkt. No. 30, Ex. E].

Agent, Prescott E. Wright. [Dkt. No. 45 ¶ 12 (s),(t)]. Wright confirmed that he no longer has the authority to assign mortgages on behalf of AMC. [Dkt. No. 45 ¶ 12(u)].

## II.   DEFAULT JUDGMENT

Entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). A federal court may order a default judgment if it has personal jurisdiction over the parties, subject matter jurisdiction over a particular claim, and the defendant has been provided fair notice of the claim and an opportunity to respond to it. In re The Home Restaurants, Inc., 285 F.3d 111, 114 (1st Cir. 2002). Entry of a default judgment "plays a constructive role in maintaining the orderly and efficient administration of justice.'" KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 13 (1st Cir. 2003) (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993)). However, a default judgment is a "drastic sanction that runs contrary to the goals of resolving cases on the merits and avoiding harsh or unfair results." Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 51 (1st Cir. 2009) (quotations and citations omitted). Here, subject matter jurisdiction is established pursuant to 28 U.S.C. § 1332 and U.S. Bank has complied with all procedural requirements for entry of a default judgment. See Fed. R. Civ. P. 54(c); Fed. R. Civ. P. 55. Accordingly, the court will address the merits of U.S. Bank's motion.

## III.   DISCUSSION

U.S. Bank argues that AMC is the current mortgagee of record and that AMC is incapable of assigning the Williams mortgage due to its involuntary dissolution. [Dkt. No. 30 ¶ 42]. In lieu

7

of a formal assignment, U.S. Bank seeks a default judgment granting it equitable quiet title, effectively declaring that U.S. Bank holds the 2006 Corrective Mortgage.

U.S. Bank avers that it has the authority to obtain an equitable assignment of the 2006 Corrective Mortgage because it holds the Williams note. [Dkt. No. 30 ¶ 13]. In Massachusetts, a party legally authorized to enforce a promissory note has the right to direct the mortgagee of record to assign the corresponding mortgage to it through a court order. See Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569, 576-77 (2012) ("[W]here a mortgage and note are separated, 'the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage, which may be accomplished by filing an action in court and obtaining an equitable order of assignment,'" (quoting U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 652 (2011)). "This makes perfect sense: if the debtor-mortgagor defaults, the noteholder needs to control the mortgage in order to enforce its bargained-for security interest and collect the debt." Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 292 (1st Cir. 2013).

Therefore, this discussion of U.S. Bank's arguments proceeds in three parts. The first assesses whether U.S. Bank is the current holder of the Williams note. The second assesses whether at the time of its dissolution AMC was the mortgagee of record of the 2006 Corrective Mortgage. The third considers AMC's corporate status and whether equitable assignment of the 2006 Corrective Mortgage is appropriate.

### A. **Ownership of the Note**

Parties entitled to enforce an instrument include, "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument." See M.G.L. c. 106, § 3-301; see also Courtney v. U.S. Bank, N.A., 922 F. Supp. 2d 171,174 (D. Mass 2013) ("Under the

Uniform Commercial Code[,] when a note is endorsed in blank, it may be enforced by proof of possession alone." (internal citations omitted)).  The Williams note, as reproduced in the record, contains an allonge with two endorsements.  [Dkt. No. 30, Ex. B].  One endorsement, undated but apparently the first, assigns the Williams note from AMC to WAMU.  [Dkt. No. 30, Ex. B].  The second, also undated, is a blank endorsement from WAMU.  [Dkt. No. 30, Ex. B].  "The effect of an endorsement in blank is that a note is enforceable by proof of possession alone."  Nationstar Mortg. LLC v. Galvin, No. 17-CV-40123, 2019 WL 1959862, at *3 (D. Mass. May 2, 2019); see also M.G.L. c. 106, § 3-205(b) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.").  Generally, proof of possession can be established by an affidavit alone.  See Culley v. Bank of America, N.A., No. 18-CV-40099, 2019 WL 1430124, at *6 (D. Mass. Mar. 29, 2019); Lewis v. Bank of New York Mellon Trust Company, N.A., No. 16-11122, 2017 WL 129994, at *2 (D. Mass. Jan. 12, 2017).  However, when there is a gap in the chain of title, a noteholder must provide evidence of "of where, when, and how it acquired the note" to establish possession.  Deutsche Bank National Trust for IXIS 20060HE3 v. Moynihan, 270 F. Supp. 3d 497, 508-09 (D. Mass. 2017) (citing In re Gavin, 319 B.R. 27, 31-32 (1st Cir. BAP 2004)).  Here, the endorsements on the Williams note are not dated, and its possessory history is complex.  Thus, the court asked U.S. Bank to provide evidence of the possessory history of the Williams note to ensure there is no gap in the chain of title.  "[A] break in the chain of title is bridged not by drawing a 'reasonable inference' from circumstantial evidence, but by providing direct evidence which establishes the terms of the loan, ownership of the loan, and adequate protection that the Debtor will not sustain a loss from another party claiming to own the Note."  In re Gavin, 319 B.R. at 32–33.

The undersigned is satisfied that there is no gap in the chain of title and that U.S. Bank is the lawful holder of the Williams note. First, AMC, to whom the Williamses gave the note as evidence of the loan, specially endorsed the Williams note to WAMU, and WAMU endorsed the Williams note in blank. The Williams note is held by U.S. Bank through its agents, SPS and Doonan. Second, the record shows that the Williams note is an asset of the Trust. U.S. Bank provided a copy of a PSA which on June 1, 2005 named WAMU the Trust's initial custodian and servicer and LaSalle the trustee. [Dkt. No. 54 ¶ 13; Ex. E]. U.S. Bank also provided a redacted schedule of Trust assets. [Dkt. No. 54, Ex. F]. The schedule includes a loan identified by information matching the Williams note.[5] [Dkt. No. 54, Ex. F]. On September 25, 2008, WAMU failed and was acquired by JPMorgan. [Dkt. No. 54 ¶ 17]. U.S. Bank did not clarify in its filings whether as a result of the acquisition JPMorgan assumed WAMU's role as the Trust's servicer and custodian. Nevertheless, it averred that once JPMorgan acquired WAMU, JPMorgan took possession of the endorsed-in-blank Williams note. The affidavit of U.S. Bank's agent established that JPMorgan was in possession of the Williams note in 2009. [Dkt. No. 54 ¶ 19]. JPMorgan, acting as successor in interest to WAMU, assigned the Williams note in 2010 to BOA, the successor trustee to the Trust. [Dkt. No. 30 ¶ 22; Ex. G]. On December 30, 2010, U.S. Bank

---

[5] U.S. Bank asserts that the PSA loan schedule proves that LaSalle acquired the Williams note in trust for the Trust. According to the PSA, the schedule of assets must identify (among other things) the loan number; the city, state, and zip code of the property; and the original value of the mortgage. [Dkt. No. 54, Ex. E § 1.01]. In the schedule of Trust assets that U.S. Bank provided, the loan identified contains this information, and it matches the information for the Williams note. [Dkt. No. 30, Ex B; Dkt. No. 54, Ex. F]. It also includes the last four digits of the loan number, which are identical to the last four digits of the loan number on the allonge to the Williams note. [Dkt. No. 30, Ex. B; Dkt. No. 54, Ex. F]. The undersigned notes that the PSA does not require the loan to be identified by the street address or mortgagors. See Ibanez, 458 Mass. at 650 (noting that the PSA loan schedule lacked adequate specificity to identify the loan at issue). Moreover, the fact that WAMU endorsed the Williams note in blank is significant because WAMU was an original party to the PSA, and the PSA expressly provides for notes to either be endorsed in blank, endorsed to LaSalle in trust, or endorsed to the Trust itself. [Dkt. No. 54, Ex. E § 1.01 (defining "mortgage file" to include notes endorsed in blank)]. See Carroll v. Bank of N.Y. Mellon, 91 Mass. App. Ct. 1116, at *7 (2017) (unpublished decision) (noting as significant that one of the parties to the PSA was the one who endorsed the note in blank and the PSA required notes to be endorsed in blank). Here, U.S. Bank has established that the Williams note is a Trust asset.

succeeded BOA as the trustee for the Trust. [Dkt. No. 73, Ex. B; Ex. C]. In 2013, U.S. Bank officially appointed JPMorgan as servicer of the Trust. [Dkt. No. 54 ¶ 18]. Subsequently, JPMorgan, as servicer of the Trust, released the Williams note to SPS, U.S. Bank's agent. [Dkt. No. 54 ¶ 20]. On May 18, 2017, SPS released the original Williams note to Doonan for the purposes of this litigation. [Dkt. No. 54 ¶ 21]. While not free from inconsistencies, the note possession history satisfies the undersigned that U.S. Bank has established that it (or, in this case, its agents) is in valid possession of the Williams note, and that it owns the Williams note in trust for the Trust.

The undersigned acknowledges the risks of establishing the chain of title to a note endorsed in blank in a default judgment. As the court noted in In re Gavin, "a court may not enter judgment in favor of the person seeking enforcement unless it finds that the person obligated to pay the instrument is adequately protected against loss that might occur due to a claim by another party seeking to enforce the instrument." 319 B.R. at 32. Here, the credible evidence protects the borrowers against such risk. The Williams note is a Trust asset, and U.S. Bank holds the Williams note in trust as successor to BOA, successor by merger to LaSalle for the Trust. Therefore, the undersigned finds that U.S. Bank is the valid owner of the Williams note.

### B. Validity of the Mortgage Assignments

As the court finds that U.S. Bank owns and possesses the Williams note, it is necessary to review the assignments of the 2006 Corrective Mortgage to determine whether AMC is the current mortgagee of record and therefore the correct defendant in this action.

M.G.L. c. 183, § 54B governs the assignment of mortgages in Massachusetts and reads in relevant part:

> [An] assignment of mortgage[,] . . . if executed before a notary public, justice of the peace or other officer entitled by law to acknowledge instruments, whether executed within or without the commonwealth, by a person purporting to hold the position of president, vice president, treasurer, clerk, secretary, cashier, loan representative, principal, investment, mortgage or other officer, agent, asset manager, or other similar office or position, including assistant to any such office or position, <u>of the entity holding such mortgage</u>, or otherwise purporting to be an authorized signatory for such entity, or <u>acting under such power of attorney on behalf of such entity</u>, acting in its own capacity or as a general partner or co-venturer of the entity holding such mortgage, shall be binding upon such entity and shall be entitled to be recorded . . . .

M.G.L. c. 183, § 54B. (emphasis added). "In other words, to be valid and binding, an assignment [of a mortgage] must be (1) executed before a notary public or person with similar authority to acknowledge such instruments; and (2) executed by a person 'purporting' to hold the position of vice president or the like, with 'the entity holding such mortgage.'" <u>Lopez v. Mortg. Elec. Registration Sys., Inc. ("In Re Lopez")</u>, 486 B.R. 221, 229 (Bankr. D. Mass. 2013) (quoting M.G.L. c. 183, § 54B). Where, as here, a mortgage names as lender one party, and as mortgagee another, the "lender[] cannot execute a valid assignment of [the mortgage] when it was not the named mortgagee." <u>Nationstar</u>, 2019 WL 1959862 at *13 (quoting <u>Stephens-Martin v. Bank of N.Y. Mellon Tr. Co.</u>, No. 12 MISC 465277, 2013 WL 5508415, at *5 (Mass. Land Ct. Oct. 1, 2013)). An assignment of mortgage is only valid if "executed by someone acting on behalf of the entity that holds record title to the mortgage." <u>See</u> <u>Stephens-Martin</u>, 2013 WL 5508415 at *5.

The 2005 Original Mortgage named AMC as the lender and MERS as the mortgagee. [Dkt. No. 30, Ex. C]. The 2006 Corrective Mortgage, however, named AMC as both the lender and the mortgagee. [Dkt. No. 30, Ex. D]. Here, documents reflect potentially four assignments of the 2006 Corrective Mortgage:

- the November 5, 2009 assignment of the mortgage from MERS to BOA [Dkt. No. 30, Ex. E];

12

- the January 14, 2010 assignment from WAMU to JPMorgan, which itself recites an earlier assignment of the mortgage from AMC to WAMU [Dkt. No. 30, Ex. F];

- the January 16, 2010 assignment of the mortgage from JPMorgan to BOA [Dkt. No. 30, Ex. G]; and

- the December 1, 2016 assignment from BOA to U.S. Bank [Dkt. No. 30, Ex. K].

U.S. Bank argues the November 5, 2009 assignment from MERS to BOA was ineffective because only the mortgagee of record at the time, AMC, had authority to assign the 2006 Corrective Mortgage. The undersigned agrees. The corrective mortgage vitiated MERS' interest and authority to assign the mortgage. [Dkt. No. 30, Ex. D]. AMC, as the named mortgagee on the 2006 Corrective Mortgage, held legal title before, and continued to hold legal title after, MERS purported to assign the mortgage to BOA on November 5, 2009. Therefore, in 2009, MERS was without authority to assign the mortgage to BOA.

The purported assignment on January 14, 2010 to JPMorgan from WAMU is more complicated. U.S. Bank argues that this assignment is invalid because neither JPMorgan nor WAMU had obtained a written assignment of the 2006 Corrective Mortgage. To understand U.S. Bank's argument, the undersigned looks to JPMorgan's January 14, 2010 recording of the Williams note. Attached to the recording was an affidavit pursuant to 2010 M.G.L. c. 183 § 5B, filed by JPMorgan's attorney ("the § 5B affidavit"). [Dkt. No. 30, Ex. F]. In it, counsel asserted that AMC did assign the 2006 Corrective Mortgage to WAMU, but that the original assignment cannot be found. [Dkt. No. 30, Ex. F]. This averment fails to prove an assignment of the 2006 Corrective Mortgage from AMC to WAMU. "By force of our statutes regulating the transfer of real estates and for preventing frauds, no interest passes by a mere delivery of a mortgage deed, without an assignment in writing and by deed." Akar v. Fed. Nat. Mortg. Ass'n, 843 F. Supp. 2d

154, 164 n.8 (D. Mass. 2012) (quoting Warden v. Adams, 15 Mass. 233, 236 (1818)). Because a mortgage is an interest in real property, "the statute of frauds accordingly requires that an assignment of a mortgage be in writing." In re Samuels, 415 B.R. 8, 20 (Bankr. D. Mass. 2009); see also WMC Mortg. Corp. v. Massachusetts Prop. Ins. Underwriting Ass'n., No. 09-CV-10437, 2010 WL 3734120, at *9 (D. Mass. Sept. 1, 2010), report and recommendation adopted, No. 09-CV-10437, 2010 WL 3734118 (D. Mass. Sept. 22, 2010) (holding the plaintiff could not prove ownership of the mortgage without a written assignment). Here, without a written assignment, the averment of JPMorgan's attorney fails to prove the assignment of the 2006 Corrective Mortgage from AMC to WAMU.

In addition to asserting that AMC assigned the 2006 Corrective Mortgage, the § 5B affidavit asserted that JPMorgan owned the 2006 Corrective Mortgage because JP Morgan had received the Williams note endorsed in blank when WAMU went into receivership. [Dkt. No. 30, Ex. F]. In Massachusetts, "the mortgage and the promissory note may travel separately." Lindsay v. Wells Fargo Bank, N.A., 12-CV-11714, 2013 WL 5010977 at *10, (D. Mass. June 14, 2013). When the two documents are separated, "the assignment of the note does not carry with it the assignment of the mortgage." Ibanez, 941 Mass. at 652 (citing Barnes v. Boardman, 149 Mass. 106, 114 (1889)). Here, the documents were separate. Thus, JPMorgan was not assigned the 2006 Corrective Mortgage even though it received the Williams note from WAMU. AMC remained the mortgagee of record.

Because JPMorgan did not have the authority to assign the 2006 Corrective Mortgage, both the 2010 assignment to BOA and BOA's later assignment to U.S. Bank also fail. See Fed. Nat'l Mortg. Ass'n v. Carr, No. 12-10024, 2012 WL 6021306 at *3 (Mass. App. Div. Nov. 29, 2012) (holding an assignment of mortgage to be invalid because the purported assignor did not own the

14

mortgage at the time of assignment). As all assignments of the 2006 Corrective Mortgage are ineffective as a matter of law, AMC has remained the mortgagee of record since it was so named on the 2006 Corrective Mortgage on June 23, 2006.

### C.      Ability to Obtain an Assignment from AMC

As shown above, the Williams note and the 2006 Corrective Mortgage securing the note are separated. AMC is the mortgagee of record, and U.S. Bank holds the Williams note. As the note holder, U.S. Bank has the right to compel AMC to assign it the mortgage, and, if necessary, to bring an action to obtain an equitable order of assignment. Eaton, 462 Mass. at 576-77. U.S. Bank did not pursue this remedy apparently because AMC is defunct. [Dkt. No. 24. Order (reporting representations of counsel)]. There is no question that AMC is a defunct entity. Attached to the Amended Complaint is a Business Entity Summary for AMC from the Secretary of the Commonwealth reflecting that on June 18, 2012, AMC was involuntarily dissolved. [Dkt. No. 30, Ex. H].

Under Massachusetts law, "[a] corporation [that has been] administratively dissolved continues its corporate existence but may not carry out any business except that necessary to wind up and liquidate its business and affairs." See M.G.L. c. 156D, § 14.21(c); see also M.G.L. c. 156D § 14.05. Winding up and liquidating a dissolved corporation includes "making adequate provision, by payment or otherwise . . . for all of the corporation's existing and reasonably foreseeable . . . obligations, whether or not liquidated, matured, asserted, or contingent" and also "doing every other act necessary to wind up and liquidate its affairs." Id. § 14.05(a)(3), (5). The importance of a corporation's continuing existence for the purposes of winding up its affairs is underscored by the fact that dissolution alone does not serve to transfer any assets of the corporation. Id. § 14.05(b)(1). Moreover, dissolution does not "terminate the authority" of the

15

registered agent of the corporation to accept service on behalf of the dissolved entity. Id. § 14.21(d).

Based on this law and the record, on November 28, 2018, this court denied U.S. Bank's first motion for a default judgment against the Williamses because the undersigned determined that AMC was a necessary party pursuant to Fed. R. Civ. P. 19. [Dkt. No. 24]. In the court's view, U.S. Bank's submission failed to establish that it had attempted to serve AMC or that AMC was incapable of being served. [Dkt. No. 24]. Absent proof that AMC could not be brought into this proceeding, this court was unwilling to issue a default judgment adverse to and binding on AMC. [Dkt. No. 24]. See Md. State Fireman's Ass'n v. Chaves, 166 F.R.D. 353, 354 (D. Md. 1996) (holding that service of process must be compliant with the Federal Rules before a default judgment may be entered against a defendant). Pursuant to M.G.L. c. 156D § 14.21, AMC's corporate existence continues for the purposes of winding up and liquidating its affairs, and its registered agent retains the authority to accept service on behalf of AMC.

U.S. Bank then took a number of measures to notify AMC. They contacted AMC's registered agent on November 30, 2018 and were informed that the agent no longer had the authority to execute documents, including assignments of mortgage. [Dkt. No. 45 ¶ 12 (s)-(u)]. Then U.S. Bank amended the complaint to include AMC as a defendant. [Dkt. No. 30]. U.S. Bank served process on AMC's registered agent on August 16, 2019. AMC has not answered or otherwise responded to U.S. Bank's claims. [Dkt. No. 38]. The undersigned is satisfied with U.S. Bank's attempts to contact or otherwise obtain a formal assignment from AMC. Further, U.S. Bank's submissions provides proof of AMC's involuntary dissolution and inability to assign the 2006 Corrective Mortgage to U.S. Bank. See Nationstar, 2019 WL 1959862 at *6 (finding proper

service, in conjunction with failure to respond by a defunct corporation, to establish an inability to obtain an assignment of mortgage).

Because U.S. Bank is the valid owner of the Williams note, and is unable to obtain a formal assignment of the 2006 Corrective Mortgage from AMC due to AMC's involuntary dissolution, the undersigned recommends that U.S. Bank's motion for entry of a default judgment against AMC be GRANTED.

### D.     Consent Judgment with the Williamses

On October 15, 2020, U.S. Bank filed a motion for approval of an agreement with the Williamses as a consent judgment. [Dkt. No. 69].[6] I recommend the motion be GRANTED.

A consent judgment has characteristics of both contracts and final judgments on the merits. Rolland v. Patrick, 946 F. Supp. 2d 226, 227 (D. Mass. 2013). It "places the power and prestige of the court behind the compromise struck by the parties." Id. (quoting Williams v. Vukovich, 720 F.2d 909, 920 (6th Cir.1983)). When reviewing a motion for entry of a consent judgment, a court "must review [it] to ensure that it is fair, adequate and reasonable; that the proposed decree will not violate the Constitution, a statute or other authority; and that it is consistent with the objectives of Congress." Varsity Wireless Inv'rs, LLC v. Town of Hamilton, 370 F. Supp. 3d 292, 300 (D. Mass. 2019), appeal dismissed sub nom. Varsity Wireless Inv'rs, LLC v. Woods, No. 19-CV-1446, 2019 WL 5692232 (1st Cir. Aug. 28, 2019) (quoting Conservation Law Found. of New England, Inc. v. Franklin, 989 F.2d 54, 58 (1st Cir. 1993)). Additionally, "in evaluating the fairness of a proposed consent decree, 'a court should examine both the procedural and substantive aspects of the decree,' and 'fairness should be examined from the standpoint of signatories and non-parties

---

[6] This motion effectively moots the motion for a default judgment as to the Williamses. Therefore, as to the Williamses, the undersigned recommends that the motion for default judgment be DISMISSED AS MOOT.

17

to the decree.'" Id. (quoting United States v. Cannons Eng'g Corp., 720 F. Supp. 1027, 1040 (D. Mass. 1989), aff'd, 899 F.2d 7).  A court may properly approve a consent judgment if "(1) it 'spring[s] from and serve[s] to resolve a dispute within the courts' subject-matter jurisdiction'; (2) it 'come[s] within the general scope of the case made by the pleadings'; and (3) furthers the objectives upon which the complaint was based." Conservation Law Found. of New England, Inc., 989 F.2d at 59 (quoting Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 525 (1986)).

    The consent agreement states:

> Title to the Property shall be quieted to reflect U.S. Bank as the mortgagee of record of the mortgage dated April 21, 2005, given by [the Williamses] to [AMC] and recorded with the Worcester County . . . Registry of Deeds in Book 36256, Page 144, as affected by a Corrective Mortgage recorded in Book 39322, Page 367.  In consideration for this Consent Judgment, [U.S. Bank] agrees to release and waive its right to pursue a judgment for any deficiency balance owing on the Loan after [U.S. Bank] sells the Property at its anticipated foreclosure sale.

[Dkt. No. 70].  The undersigned finds that this agreement is fair and reasonable.  The Williamses have been on notice of this matter and not contested any of U.S. Bank's assertions and evidence that U.S. Bank holds the Williams note in trust and, as Trustee, is authorized to enforce the bargained-for security interest.  Further, on the basis of the record, the only other party whose interests are implicated in this suit and proposed consent agreement is AMC, which is defunct and has failed to plead or otherwise defend.  The consent agreement comes within the scope of the pleadings.  Finally, in return for the Williams' consent, U.S. Bank has agreed to waive any deficiency judgment after foreclosure.  Given this assessment, the undersigned recommends approval of the consent judgment.  See Cannons Eng'g Corp., 720 F. Supp. at 1035 ("Approval of a proposed consent decree is committed to the discretion of the district court. . . [t]his discretion is

to be exercised in light of the strong policy in favor of voluntary settlement of litigation." (internal citations omitted)).

## CONCLUSION

For the reasons herein, the undersigned RECOMMENDS that U.S. Bank's motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(1) be GRANTED as to AMC. U.S. Bank has demonstrated its entitlement to default judgment against AMC as a matter of law. The undersigned further RECOMMENDS that U.S. Bank's motion for a consent judgment be granted as to the Williamses. The consent judgment is fair and reasonable as to all parties. The undersigned further RECOMMENDS that U.S. Bank be deemed in equity mortgagee of record of the Williams mortgage.[7]

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[7] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2). The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).